IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT WAYNE DENNIS,<br><br>Defendant. | CASE NO. 21-CR-679 (JEB) |

## UNITED STATES' TRIAL BRIEF

The United States, by and through its attorney, respectfully submits this brief summarizing the Government's evidence at trial and various legal issues likely to be brought before the Court.

**I.      THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS**

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds when a joint session of Congress had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael Pence, as the President of the Senate, was there to preside over the joint session and, later, the Senate proceedings. On that day, physical barriers surrounded the U.S. Capitol building and grounds.  At all relevant times, the U.S. Capitol building and its grounds—including the Lower West Terrace, the Upper West Terrace, and the inaugural stage—were closed to the public.

The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Pence was present and presiding, first in the joint session, and then in the Senate chamber.  As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol

building. U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

The defendant, Robert Wayne Dennis, was among those thousands who illegally entered the U.S. Capitol grounds that day.[1]  At approximately 2:50 p.m., defendant Dennis climbed down from the inaugural stage to join a crowd of rioters on the Upper West Terrace.  A line of Metropolitan Police Department ("MPD") officers, who were assisting the Capitol Police in defending the Capitol building and grounds, had formed minutes earlier at the top of a short set of steps.  The MPD officers formed the line to ward off additional rioters from breaching the Capitol building.  Many of the officers held their batons out in front of them as they stood in formation.

---

[1]     Dennis did not enter the Capitol Building; as described below, he was handcuffed and detained following a physical confrontation with police officers on the Capitol Grounds outside the Capitol Building on the Upper West Terrace.

2

At approximately 2:51 p.m., the defendant made his way to the front of the crowd and then walked deliberately up the steps to the MPD line. He pointed both his hands at the officer in front of him, MPD Officer Chad Wyble, as he approached, and grabbed Officer Wyble's baton. Officer Wyble and the two officers standing to his right, Officer Dora Vandayburg (nee Pacheco) and Officer John Stadnik, attempted to prevent the defendant from crossing their police line. Defendant continued his unprovoked attack on the officers. They engaged in an extensive physical altercation during which, at one point, defendant was on top of Officer Stadnik on the ground. Approximately half a dozen officers worked to restrain the defendant by using, among other things, pepper spray. By approximately 2:54 p.m., the officers had managed to place Dennis in handcuffs.

Two MPD officers escorted defendant, in handcuffs, toward the Southeast side of the Capitol. At approximately 3:14 p.m., they obtained his driver's license information and released him, advising him that an arrest warrant would be sought in the future. The MPD officers released the defendant because they determined that they could not transport him to a facility, get him medical attention, and process his arrest while the riot remained ongoing.

Based on his actions on January 6, 2021, the defendant is charged with nine crimes:

1. Civil Disorder, in violation of 18 U.S.C. § 231(a)(3)

2. Assaulting, Resisting, or Impeding Certain Officers, namely, Officer J.S., in violation of 18 U.S.C. § 111(a)(1)

3. Assaulting, Resisting, or Impeding Certain Officers, namely, Officer D.P., in violation of 18 U.S.C. § 111(a)(1)

4. Assaulting, Resisting, or Impeding Certain Officers, namely, Officer C.W., in violation of 18 U.S.C. § 111(a)(1)

5. Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1)

6. Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2)

7. Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4)

8. Disorderly Conduct in a Capitol Building,
   in violation of 40 U.S.C. § 5104(e)(2)(D)

9. Act of Physical Violence in the Capital Building or Grounds,
   in violation of 40 U.S.C. § 5104(e)(2)(F)

## II.   ELEMENTS OF THE ALLEGED CRIMES

The parties have submitted to the Court a joint filing setting forth their views of the elements of the crimes alleged, as requested by the Court at the Pre-Trial Conference.  ECF 49.

## III.   THE GOVERNMENT'S PROOF

The Government intends to call approximately six to eight primary witnesses, including a Captain from the U.S. Capitol Police, a Special Agent from the Federal Bureau of Investigation, and four to six Metropolitan Police Department Officers who observed aspects of defendant's conduct. The government also expects to present video and photographic evidence of the defendant's actions.  Further the parties have agreed to various stipulations to obviate the need for the Government to call additional trial witnesses to prove various facts that are not specific to the defendant and that have been proven (or stipulated to) repeatedly in trials related to January 6, 2021.   This presentation will prove the charged offenses beyond a reasonable doubt.

### A.  Compilation Exhibit About January 6, 2021 Events at the U.S. Capitol

The Government intends to introduce evidence through a U.S. Capitol Police Captain familiar with the Capitol Police procedures leading up to January 6, 2021, including the security measures put in place.  This witness is also familiar with how the riot unfolded during the day and the efforts of the Capitol Police, and law enforcement agencies that assisted the Capitol Police, to secure the Capitol and control the riot.  Further, this witness is also familiar with the approximately 1,600 cameras present at the U.S. Capitol building and grounds, as well as the radio transmissions (often referred to as "radio runs") used by Capitol Police officers. From videos and radio runs

created on January 6, 2021, the Government has developed a six-minute video montage exhibit covering the events of the day, which the Government will use to supplement this witness's testimony.

Evidence about the official proceeding, its disruption, and the actions of Capitol Police with respect to the rioters, is relevant to the charges in at least three respects.

First, for Count One, the government must prove that the crime occurred during a "civil disorder," which is defined by statute as "any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property." 18 U.S.C. §§ 231, 232. The compilation exhibit provides evidence of the scope of the riot on January 6, 2021, including evidence of damage caused to the Capitol by rioters breaking windows and the danger of injury that rioters caused to law enforcement officers and persons inside the Capitol.

Second, for Count Six, the government must prove that the defendant engaged in "disorderly or disruptive conduct" in a restricted area "when . . . such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). The compilation exhibit establishes how and when the rioters' disrupted the official proceedings in the Capitol by showing, among other things, illegal breaches by rioters into the Capitol Building. This evidence will complement other evidence, specific to the defendant, that will show the defendant's individual actions in contributing to the mob that disrupted Congress.

Third, for Counts Six and Seven, the government must prove the defendant knowingly engaged in certain conduct in a restricted area.[2] The compilation establishes that the defendant's conduct occurred in a restricted area by, among other things, showing the efforts of law enforcement, both before and during the breach of the restricted area, to keep unauthorized persons out of the restricted area.

### B. Self-authenticating Records

The Government intends to introduce three self-authenticating records, together with a certification pursuant to Federal Rules of Evidence 902(11) and 902(13), to establish the impact on the business of Safeway, Inc. (and thus the impact on interstate commerce) of the riot on January 6, 2021. The Government provided these exhibits to the defense with the materials furnished on December 29, 2022.

### C. Testimony of FBI Special Agent Adam Pope

The Government will present testimony from Adam Pope, the FBI case agent assigned to this matter. Agent Pope participated in the interview of the defendant on July 7, 2021, the defendant's arrest on October 20, 2021, and the custodial interview of the defendant that same day. Agent Pope has also reviewed surveillance video and body-worn camera footage maintained by the U.S. Capitol Police and the Metropolitan Police Department, respectively.

Given this foundation, Agent Pope will testify at trial regarding his interviews of the defendant, subject to the Court's ruling on the defendant's pending motion to suppress.[3] Agent

---

[2] A defendant may violate 18 U.S.C. § 1752(a)(2) by engaging in disruptive conduct (with the appropriate *mens rea*) while "within such proximity" to a restricted area. The proof in this case will establish that the defendant was "in" the restricted area, not merely in close proximity to it.

[3] Special Agent Pope will also testify at the suppression hearing, which is currently scheduled for January 9, 2023.

Pope will also testify at trial regarding, among other things, his observations from his review of relevant body-worn camera video footage showing the defendant.  This footage is drawn from the body-worn cameras of the MPD officers who are the alleged victims of Counts Two, Three, and Four, as well as from the body-worn cameras of other officers who were in the vicinity of the altercation giving rise to the charges.  The Government anticipates using demonstrative aids or summary exhibits to facilitate this testimony.

Agent Pope's testimony regarding the events of January 6 will merely be offered to orient the Court regarding the identities of the different officers shown in the body-worn camera video, and the location of the different officers during the altercation at issue.  The Government offers this testimony to simplify the testimony that will follow from the various MPD officers.  Agent Pope will *not* testify regarding his assessment of key disputed factual issues for the Court to resolve, such as whether the defendant instigated the physical altercation at issue.

The Government respectfully requests that Agent Pope be permitted to sit at counsel table throughout trial pursuant to Federal Rule of Evidence 615.

## IV. THE GOVERNMENT'S DISCLOSURE OF EXHIBITS AND *JENCKS* ACT MATERIAL

On December 29, 2022, the Government provided defense with a preliminary set of trial exhibits and its *Jencks* Act disclosures.  The Government also provided defense with a preliminary exhibit list to assist defense in navigating the materials.  On December 30, 2022, the Government provided additional *Jencks* Act disclosures related to its likely MPD officer witnesses.  On December 30, 2022, the defense provided the Government with a defense exhibit list and the potential defense exhibits that were not already in the Government's possession.

The parties met and conferred regarding these materials on December 29, 2022, and December 30, 2022.  Both parties reserved the right to supplement their exhibits lists as necessary.

On January 2, 2023, the Government provided additional exhibits, which were primarily screenshots of the previously identified videos.

On January 2, 2023, the parties exchanged witness lists, reserving the right to supplement as necessary. Some of the potential defense witnesses are also likely Government witnesses. For the sake of efficiency, the Government has proposed that the defense be permitted to cross-examine Government witnesses beyond the scope of the direct examination to prevent the same individual from having to testify twice in the same trial.

## V.     THE DEFENDANT'S NOTICED PUBLIC AUTHORITY DEFENSE

On November 7, 2022, defendant filed a notice of public authority defense, asserting that "on or about January 6, 2021, [the defendant] was and believed he was directed and authorized to go to the Capitol building and enter the Capitol Grounds by Donald J. Trump and his various agents and representatives." ECF 35. Notably, the defendant's asserted public authority defense does not purport to be a defense to civil disorder; assaulting, resisting or impeding law enforcement officers; or engaging in acts of violence in a restricted area or on Capitol grounds; as charged in Counts One, Two, Three, Four, Seven, and Nine. Regardless, a public authority defense is not available for any of the charges here.

The public authority defense allows 'the defendant [to] seek[ ] exoneration based on the fact that he reasonably relied" on the "actual authority of a government official to engage him in a covert activity." *United States v. Fulcher* 250 F.3d 244, 253-54 (4th Cir. 2001); *see* Fed. R. Crim. P. 12.3(a)(1). Former President Trump, however, did not have the authority to permit or authorize the criminal conduct allegedly engaged in by the defendant on January 6—including assaulting, resisting or impeding certain officers, civil disorder, engaging in acts of violence on Capitol Grounds and in a restricted area, and disorderly conduct. The defendant's "public-authority"

defense thus must fail because no government agent possessed actual authority to order or sanction the defendant's criminal actions.

The validity of the public-authority defense "depends upon whether the government agent in fact had [the] authority to empower the defendant to perform the acts in question. If the agent had no such power, then the defendant may not rest on the 'public authority' [defense]." *United States v. Burrows*, 36 F.3d 875, 881-82 (9th Cir. 1994) (quoting *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994)).[4] Former President Trump did not have the authority to lawfully sanction the attack on the United States Capitol on January 6 or any of the other criminal conduct perpetrated by the defendant or his fellow rioters. Chief Judge Howell elucidated this point as follows:

> [A President] cannot, in keeping with his constitutional function and his responsibilities under Article II, lawfully permit actions that directly undermine the Constitution. Thus, a President cannot, within the confines of his constitutional authority, prevent the constitutionally mandated certification of the results of a Presidential Election or encourage others to do so on his behalf, nor can he direct an assault on the coequal Legislative branch of government. Were a President to attempt to condone such conduct, he would act *ultra vires* and thus without the force of his constitutional authority. Put simply, even if former President Trump in fact [explicitly directed the rioters' actions], his statements would not immunize defendants charged with

---

[4] The circuits that have considered the issue are unanimous on that point. *See, e.g., United States v. Sariles*, 645 F.3d 315, 318-19 (5th Cir. 2011) ("the public authority defense requires the defendant reasonably to rely on . . . actual, not apparent, authority"); *Fulcher*, 250 F.3d at 254 ("we adopt the unanimous view of our sister circuits that the defense of public authority requires reasonable reliance upon the actual authority of a government official"); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 137 S. Ct. 1626 (2017); *United States v. Holmquist*, 36 F.3d 154, 161 nn. 6-7 (1st Cir. 1994) (characterizing as "nonexistent" and "not a defense at all" the "'defense' of apparent public authority" based "on a mistaken but good-faith belief that one's conduct is authorized by the government"); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) (declining to adopt view that "a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real"); *cf. United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980) (noting in dicta that defendants' claim that CIA officer had conspired with them to murder an ambassador "would not have created a defense if appellants' participation in the crimes had been established," and therefore describing evidence of the officer's employment with the CIA as likely "immaterial").

offenses arising from the January 6 assault on the Capitol from criminal liability.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33 (D.D.C. 2021).

Chief Judge Howell's conclusion is consistent with the D.C. Circuit's holding in *United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990). In the wake of the Iran-Contra scandal, Lieutenant Colonel Oliver North faced criminal prosecution for conduct that North said he had been directed to engage in by the National Security Advisor to President Reagan, allegedly with the President's acquiescence or approval. North was a high-ranking government official indisputably working on behalf of the Administration; his superior, the National Security Advisor, had not only condoned but engaged in similar misconduct; and his superior reported directly to the President. North subpoenaed the former President Ronald Reagan to be a witness at his trial. North also requested that the trial court use this jury instruction at his trial: "If you find that North acted in good faith on a superior's apparent authorization of his action, and that his reliance was reasonable based on the facts as he perceived them, that is a complete defense . . . ." *North*, 910 F.2d at 879.

The D.C. Circuit, however, flatly rejected North's claim that he could raise a good-faith defense based on the apparent or implied authorization by his superiors in the Executive Branch:

> North's suggested instruction, quoted above, goes so far as to conjure up the notion of a "Nuremberg" defense, a notion from which our criminal justice system, one based on individual accountability and responsibility, has historically recoiled. In the absence of clear and comprehensible Circuit authority that we must do so, we refuse to hold that following orders, without more, can transform an illegal act into a legal one.

*Id.* at 881. The D.C. Circuit similarly concluded that whether North "was following President Reagan's orders" was "immaterial" to whether North intended to "corruptly" obstruct Congress under 18 U.S.C. § 1505. *Id.* at 884. In so doing, the Court rejected North's "stunning" idea that he

could "escape the criminal consequences of his otherwise unlawful acts merely by asserting that his reason for committing the acts was that he was 'following orders.'" *Id.* at 883-84.[5]

The defendant's claim of public authorization is weaker than North's unsuccessful claim in virtually every respect. He has no personal connection to any of the individuals who allegedly authorized his conduct. On January 6, 2021, he was not a federal government official, let alone a government official engaged in high-level national security work. Rather, he was a member of the public who now claims, without any further particularity, that "he was and believed he was directed and authorized to go to the Capitol building and enter the Capitol Grounds by Donald Trump and his various agents and representatives." ECF 35. These allegations fall far short of a colorable public authority defense. *See United States v. Grider,* 21-Cr-022 (CKK), *4 (D.D.C. Aug. 1, 2022); *Chrestman* at 32-33.

---

[5] The D.C. Circuit's decision in *United States v. Barker*, 546 F.2d 940 (D.C. Cir. 1976) (per curiam) is not to the contrary. In *Barker*, the court reversed the convictions of two defendants who participated in the burglary of Daniel Ellsberg's psychiatrist's office. The defendants claimed they did so at the behest of E. Howard Hunt, a long-time CIA agent who worked under the supervision of John Ehrlichman in the White House. *North*, 910 F.2d at 879. The case featured fractured separate opinions from the three-judge panel. Judge Wilkey, half of the two-judge majority, wrote that a defendant's reasonable reliance on the "apparent authority" of a government official (there, Hunt) to authorize his conduct could make out a defense. *Id.* (quoting *Barker*, 546 F.2d at 949 (opinion of Wilkey, J.). But that portion of *Barker* was not the controlling rationale, and the panel majority in *North* subsequently rejected North's request for an instruction invoking his superiors' "apparent authorization of his action." *Id.* at 881. In any event, Judge Wilkey's application of reasonable reliance in *Barker*—where the defendants, each of whom had worked with the CIA, claimed that a government official (and previous CIA supervisor) authorized what they allegedly were told was a counter-espionage operation—has no analogue here. *Barker* therefore does not undermine the straightforward principle that the President lacks the authority to empower citizens to enter restricted Capitol grounds and buildings, assault law enforcement officers, or engage in civil disorder. *See, e.g., North*, 910 F.2d at 891 n.24.

## VI. CONCLUSION

The Government will be available to address any of the issues raised herein at the outset of trial or at the Court's convenience.

Dated: January 3, 2023

                                              Respectfully Submitted,

                                              MATTHEW M. GRAVES
                                              United States Attorney
                                              D.C. Bar No. 481052

                                              By:    */s/ Jason M. Manning*
                                              Jason M. Manning
                                              NY Bar No. 4578068
                                              Trial Attorney, Detailee
                                              Nialah S. Ferrer
                                              NY Bar No. 5748462
                                              1400 New York Ave NW, 11th Floor
                                              Washington, D.C. 20005
                                              (202) 514-6256
                                              *jason.manning@usdoj.gov*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

Dated: January 3, 2023

                                                              By:      /s/
                                                                     Jason M. Manning
                                                                     NY Bar No. 4578068
                                                                     Trial Attorney, Detailee
                                                                     Nialah S. Ferrer
                                                                     NY Bar No. 5748462
                                                                     1400 New York Ave NW, 11th Floor
                                                                     Washington, D.C. 20005
                                                                     (202) 514-6256
                                                                     *jason.manning@usdoj.gov*