IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | No. 1:21-cr-00679-JEB |
| | : | |
| ROBERT WAYNE DENNIS, | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Robert Wayne Dennis. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Dennis requests the Court to impose a variant sentence which properly reflects a (final) determination of the Advisory Sentencing Guidelines, as well as the other 18 U.S.C. §3553(a) factors, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Furthermore, the Court should take into consideration a variance downward of at least three levels from the final USSG base offense level is warranted based the extraordinary detrimental impact of the COVID-19 pandemic on incarcerated individuals at the D.C. Department of Corrections and the Federal Bureau of Prisons.

-1-

Respectfully, Mr. Dennis asks the Court to impose a sentence of, essentially, 36 months probation with the following special conditions: (1) a 120 day period of home confinement, (2) 100 hours of community service, and (3) appropriate restitution.

## I.     Case Background

On January 11, 2023, following a bench trial, the Court rendered a verdict of guilty as to counts 1-2, 4-5, 7, and 9.

Count 1 – Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).

Count 2 – Assaulting, Resisting or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). (Officer J.S.)

Count 4 –  Assaulting, Resisting or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). (Officer C.W.)

Count 5 – Entering and Remaining in a Restricted Building or Grounds,, in violation of 18 U.S.C. § 1752 (a)(1).

Count 7 – Engaging in Physical Violence in a Restricted Building or Grounds,, in violation of 18 U.S.C. § 1752 (a)(4).

Count 9 – Act of Physical Violence in the Capitol Building or Grounds,, in violation of 40 U.S.C. § 5104 (e)(2)(F).

The Court rendered not guilty verdicts as to Counts 6 & 8. And, during the trial, the government dismissed Count 3.

A sentencing hearing is scheduled for April 13, 2023, at 11:00 a.m.

I. **The Final Pre-Sentence Investigation Report [67]**

Counsel, on behalf of Mr. Dennis, has no objections to the PSR conclusion that is assigned a total offense level of 22, criminal history category I. (41-51 months imprisonment) PSR [67], ¶¶ 63, 66.  However, Mr. Dennis disagrees with, or otherwise objects to, the government's sentencing guidelines analysis (within its sentencing memorandum) wherein it suggest to the Court Mr. Dennis' total adjusted offense level is 25, (Criminal History Category I) resulting in an advisory range of 57-71 months imprisonment. *See* Govt. Sent. Memo [69], Section V. Mr. Dennis notes that USPO Hana Field also disagrees with the government's analysis, noting such in the PSR "Disclosure and Objection Chronology" section. [67, pp.29-30]

II. **Objection to the Government Requesting a Two-Level Enhancement for Obstruction of Justice**

The Government requests a two-level enhancement for obstruction of justice because, it its view, Mr. Dennis falsely testified at trial. *See* Govt. Sent. Memo [69], footnote 10, & pp. 15-16. Mr. Dennis objects to this request for the following reasons.

First,  USPO Hana Field also disagrees with the government's analysis and request for a two-level enhancement PSR [67] at footnote 5. ("The transcripts reviewed do not appear to provide any evidence that the defendant's testimony warrants an adjustment for obstruction of justice, pursuant to U.S.S.G. §3C1.1.")

Second, contrary to the government' assertions, Mr. Dennis did present false testimony nor did he commit perjury as defined in U.S.S.G. §3C1.1.  Even viewed by a preponderance of the evidence standard, Mr. Dennis testified candidly, truthfully and

Case 1:21-cr-00679-JEB   Document 70   Filed 04/06/23   Page 4 of 18

in accordance with his keen recollection of the January 6th events leading up to and during his interaction with police officers. He did not have the intent to, or willfully, mislead the Court (fact-finder) as he testified. He merely presented his recollection and explanation as to his involvement with police officers. Accordingly, a two-level enhancement for obstruction is not appropriate since he did not falsely testify at trial.

### III. Legal Standard – The Post-Booker Sentencing Framework And The Guidelines Are Not Mandatory

As it knows, the Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence.

In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). *See id.* at 757,764 – 67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (18 U.S.C. §3553(a)(2). 18 U.S.C. §3553(a).[1] This represents a cap above which the Court is

---
[1]

  18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph

*statutorily prohibited* from sentencing - even when a far greater sentence is recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892 F.2d 2698, 276-77 (3rd Cir. 1989)(Becker, J., concurring in part, dissenting in part).

In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the Supreme Court reiterated, in imposing sentence, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S.Ct. 1229, 1240 (Mar. 2, 2011).

---

(2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider – (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

A. <u>**Nature and Circumstances of the Offense**</u>

As noted above, on January 11, 2023, following a bench trial, the Court rendered a verdict of guilty as to counts 1-2, 4-5, 7, and 9.

Count 1 – Civil Disorder, in violation of 18 U.S.C. § 231(a)(3).

Count 2 – Assaulting, Resisting or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). (Officer J.S.)

Count 4 – Assaulting, Resisting or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). (Officer C.W.)

Count 5 – Entering and Remaining in a Restricted Building or Grounds,, in violation of 18 U.S.C. § 1752 (a)(1).

Count 7 – Engaging in Physical Violence in a Restricted Building or Grounds,, in violation of 18 U.S.C. § 1752 (a)(4).

Count 9 – Act of Physical Violence in the Capitol Building or Grounds,, in violation of 40 U.S.C. § 5104 (e)(2)(F).

The Court rendered not guilty verdicts as to Counts 6 & 8. And, during the trial, the government dismissed Count 3.

B. <u>**History and Characteristics of the Defendant**</u>

The Court must consider the specific history and character of the defendant and the specific circumstances and seriousness of the offense and impose no more of a sentence than is necessary to promote respect for the law, provide just punishment and treatment, afford adequate deterrence, protect the public, allow restitution to victims, and avoid unwarranted inconsistency among similarly situated defendants.

18 U.S.C. § 3553(a). The Court is no longer limited in the factors it may consider, and may consider any factors it believes relevant to tailoring an individualized and appropriate sentence.[2]

The personal characteristics, including personal and family data, physical condition, mental and emotional health, substance abuse, education, employment and financial history of Mr. Dennis also encourage the sentencing proposal herein. These factors are discussed more fully in the PSR, [67] ¶¶ 71-129

Mr. Dennis was born on December 28, 1959, into an army military family. As an "army brat." He traveled with his family across much of the United States and Germany, before his father retired to a small town in Missouri called Warsaw in 1977, when he was 17. His father dad joined the local police department a few months later who continued to work in law enforcement for the next 17 years.

Mr. Dennis has a younger brother who also retired out of the army after 20 years and an older sister who was a writer for much of her work career. He was raised with the understanding that when he graduated from high school he would be expected to move out and establish his own life. So, two weeks after he graduated in May of 1978, he waved goodbye to his parents and began doing just that.

---

[2] Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.

Over the next nine years, he had a variety of jobs in Florida, Texas, California, and Missouri which, ultimately, just paid the bills month to month. He enlisted in the Air Force in 1982, but didn't make it all the way through basic training because it was discovered that he had a serious medical condition. Copnsequently,he was given an honorable medical discharge.

In 1987, he realized that he needed to continue his education if he was going to be able to rise above manual labor positions and be able to support a family. He always liked to draw from the time he was very young and wasn't too bad at it. He enrolled at Crowder College in Neosho, Missouri where in 1989 he obtained an Associate's degree in Fine Art. While there, he was selected for the Who's Who Among Students in American Junior Colleges award. He furthered his education at Truman State University in Kirksville, Missouri where he finished up work on his BFA degree in Visual Communications in 1991.

Mr. Dennis met the woman who would become his wife while at junior college and they were married in March of 1990. His first son arrived in 1992, and his family continued to grow until June of 2007 when the sixth of his sons was born. He has two grandchildren.

He worked at a couple of small design companies in Kirksville MO after graduation from college beginning in 1991 until 1997, and he also did freelance sign work for a couple of years.

As a lifelong collector of comic books, he and his wife decided to open a comic shop in Kirksville MO at the beginning of 1993. He knew a lot about comic books, but

had no business experience at the time so, unfortunately, he had to close the shop at the end of 1995. But, he did make a lot of contacts in the comic books and hobby industry that would ultimately lead to the restoration work he does now.

Mr. Dennis also worked in the Multimedia Department of the founding College of Osteopathic Medicine in Kirksville MO, from 1998 to 2000.

In 2000 he joined his wife's church – The Church of Jesus Christ of Latter Day Saints. This is an immensely important part of his life as, to this day. Mr. Dennis is a deeply religious man.

In 2002, one of those contacts from his comic shop days invited him to begin writing descriptions for items being offered in the (at the time) new Comic Book Department at Heritage Auctions in Dallas, TX which is (currently the third largest auction company in the world). He worked on a freelance basis for the next few years, being flown back and forth between Kirksville MO, and Dallas, Texas several times a year, until one of the owners of Heritage Auctions (HA) asked him to move his family to the Dallas area so he could curate the owner's personal collection of art and collectibles on a full time basis. He accepted that position in 2005 and stayed until 2015.

During the early years of freelance for Heritage Auctions, he was able to put his graphic arts expertise into doing some restoration work on some of the original comic art pieces that HA was offering in their auctions. Over the next 20 years he has have honed his skills to a point in where he is highly regarded expert in the field of paper art restoration.

Unfortunately, his marriage ended in 2014. But, over the last couple of years, things have improved and he does get to spend most of the holidays with his ex-wife, as well as his 6 children and 2 grandchildren. He is still paying child support for his two youngest sons who are teenagers.

In 2015, he felt that his clientele was large and stable enough him to begin doing restoration work full time, which he has done for the past 9 years. He feels blessed to continue being in demand for these highly-skilled services. He also feels blessed to be loved and surrounded by numerous family members (including 6 children and 2 grandchildren) and friends, whom continue to support him during the past 2+ years since the events of January 6, 2021.

Attached as exhibits are letters in support of Mr. Dennis:

1. Benjamin LaMoure
2. Brett Stockdale
3. Dena Shipley
4. Doug Walker
5. Earl M. Hamilton
6. James W. Dennis
7. James Halperin
8. Matt Hanson
9. Micah E. Skidmore
10. Craig Standifer
11. Lillie R. Raver

### C.  Respect for the Law and Deterrence

Mr. Dennis exercised his Constitutional right to a trial. His personal history and characteristics as described throughout this memorandum, as well as noted in the 11 "support letters," it is improbable that he will participate in dishonest, reprehensible or criminal activities in the future. There are numerous reasons to be optimistic that Mr. Dennis will not engage in further criminal behavior, including the support of his large family & friends, he is 62 years old, the promise that others have seen in him, as well as his own expected statements to this Court at the sentencing hearing about the hope he has for his future. A prison sentence would have no greater effect toward the goals of sentencing than a period of probation as proposed herein.

### D.  The Need to Avoid Unwarranted Sentencing Disparities, and Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mr. Dennis's criminal convictions are serious and will likely have irreparable unintended consequences. Any lengthy prison term would nonetheless be an inappropriate sentence for Mr. Dennis. The Court should not impose a sentence which would result in an unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Counsel has surveyed other January 6th cases / sentences and notes three similar who committed factually similar behavior.

First, the Court should look to the sentence imposed as to Mr. Troy Sargent. *See* Case No. 1:21-CR-00258 - TFH. Mr. Sargent moved to the front of a police line, threw a punch at several police officers, made contact with several officers, also

inadvertently struck another member of the crowd, and then retreated back into the crowd. *See* Statement of Facts. [Doc. 57 at 3-4] (Attached as Exhibit) Mr. Sargent was convicted (voluntary guilty plea) of 18 U.S.C. § 231(a)(3), 18 U.S.C. § 111(a)(1), 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 18 U.S.C. § 1752(a)(4), and 40 U.S.C. § 5104(e)(2)(F). [74]

Mr. Dennis' criminal conduct was similar, inasmuch as he is convicted of many of the same offenses. Mr. Sargent received a sentence of 14 months' incarceration, and 24 months' supervised release. To avoid an unwarranted sentencing disparity, this Court should impose a sentence similar to the sentence Judge Hogan imposed on Mr. Sargent.

Second, this Court should look to the sentence imposed as to Matthew Council. *See* Case No. 1:21-CR-00207 -TNM. Inside the U.S. Capitol, Mr. Council barged into a line a USCP Officers so other rioters could go thorough. He was immediately arrested and while in custody expressed remorse that he had not intended to injure a Police Office. *See* Matthew Council Statement of Offense. [Doc. 55 at 4] (Attached as Exhibit) Mr. Council was convicted of 18 U.S.C. § 231(a)(3), 18 U.S.C. § 111(a)(1), 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G). Mr. Dennis' January 6th conduct / convictions are similar, as he is convicted of many of the same offenses. Judge McFadden imposed a sentence of 60 months' probation, including 180 days' home detention, 100 hours community service. Therefore, Mr. Dennis should receive a similar sentence to avoid an unwarranted sentencing disparity.

Third, this Court should look to the sentence imposed as to Mr. Philip Young. *See* Case No. 1:21-CR-617 - DLF. Mr. Young pushed a metal bike rack, along with a group of other people, into police officers. *See* Philip Young Statement of Facts [Doc. 26 at 4] (Attached as Exhibit) Mr. Philip was convicted of 18 U.S.C. § 111(a)(1), 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1752(a)(2), 18 U.S.C. § 1752(a)(4), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(F). Mr. Dennis' January 6th behavior is similar, as he is convicted of many of the same offenses. Mr. Young received a sentence of 8 months' incarceration and 36 months' supervised release. To avoid an unwarranted sentencing disparity, this Court should fashion a similar sentence.

### IV. Sentencing in the COVID-19 Era

Pursuant to the 18 U.S.C. §3553 (a) sentencing factors, the Court needs to consider the impact of the COVID-19 pandemic on incarcerated individuals and, on this basis, grant Mr. Dennis' request for a variant sentence – a deduction of three levels from the final USSG base offense level. During the past three years, COVID-19 has rampaged through the BOP facilities, causing extraordinary fear among the inmates and resulting in "lock-down" type conditions. And, with the imposition of a sentence in this case, he faces reporting to the BOP where most institutions continue to be operating under modified lock-down status because of the pandemic.

Because of COVID-19, the unusually harsher "prison" conditions, including lengthy "lock-downs," will unjustly, add to the appropriate sentence/punishment for Mr. Dennis in this case. The mental strain and stress from the fear of becoming infected and possibly suffering severe consequences is a new risk while incarcerated

-13-

and a deterrent to being locked-up again in the future. Not having the control to maintain proper social distancing and exercise proper hygiene to reduce the risks of contracting the virus were real factors for those persons incarcerated within the BOP.

Presently, it is counsel's understanding the entire (nationwide) BOP is still on a "modified operations" status.[3] As such, if Mr. Dennis is remanded to the custody of the BOP he may well experience harsher confinement conditions because of the pandemic.

Under the 3553(a)(2)(A) factor of imposing just punishment the court should consider that since March 13, 2020, the BOP "modified its operations" to respond to the spread of COVID-19. Family and friends are prohibited or otherwise restricted from visiting. Programming, absent select UNICOR operations, is restricted and movement throughout the certain detention facilities are also restricted or may be suspended. Mr. Dennis will be subjected to modified BOP operations, including the distinct possibility of being prohibited from seeing loved ones and unable to engage in rehabilitative or productive programming. CDC guidance, such as social distancing, is simply impossible to achieve in our federal prisons — particularly during a lock-down. Incarcerated individuals share bathrooms, sinks, showers, and telephones. They eat together, and sleep in close proximity to each other. They lack the freedom to bathe regularly and, essentially are unable to effectively disinfect their surroundings. Unsurprisingly, approximately 1/3 of all BOP tested positive for the COVID-19 virus

---
[3]
   *See* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed on April 5, 2023)

and at least 314 inmates and 7 BOP staff have died.[4] (And counsel notes from recent reviews of this particular section of the BOP website that in the past week one inmate has died from COVID-19)

Accordingly, the Court should acknowledge the deleterious impact the pandemic has created on confinement conditions during the past 3 years and fashion an appropriate sentence taking into account that COVID-19 remains viable and dangerous in the U.S. Prison System, as acknowledged by the ongoing restricted / modified operations within the BOP.

## V.     Defendant's Sentencing Proposal

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein and the recommendations of the PSR, Mr. Dennis respectfully asks this Court to use its discretion to devise a sentence that takes into account the unique circumstances of Mr. Dennis's criminal and personal history, to avoid unwarranted sentencing disparities, and the harsh on-going pandemic conditions expected withing the BOP, as well as the language of 18 U.S.C. §3553 & 18 U.S.C. §3661.

Furthermore, Mr. Dennis has had ample time to reflect on his mistakes, and he is deeply regretful. He should not be considered a future risk to the community and he has been sufficiently deterred from committing future crimes. Mr. Dennis is fundamentally a good family person, and there is nothing to suggest that he will be anything other than that moving forward in his life.

---

[4] https://www.bop.gov/coronavirus (last accessed on April 5, 2023)

At the sentencing hearing, Mr. Dennis may publicly express that he recognizes that he will have to live for the rest of his life with the harsh consequences of these felony convictions, both personally and in his pursuit of gainful employment.

Mr. Dennis is ready and willing to comply with all terms of any sentence imposed. He understands and recognizes that even the slightest violation of a sentencing condition may result in another period of federal imprisonment. The prolonged loss of his liberty, including the devastating and irreparable consequences to his family, is more than enough incentive for him to respect and comply with all aspects of any sentence imposed.[5]

As presented herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, the Plea Agreement, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as well as the concerns of the court and the community, will be satisfied by proposed sentence herein.

Furthermore, as discussed herein the Court should take into account a variance downward of at least three levels from the final USSG base offense level is warranted based the extraordinary detrimental impact of the COVID-19 pandemic on incarcerated individuals within the Federal Bureau of Prisons.

---

[5] Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a shorter, rather than a longer term of incarceration. As noted in the PSR, (¶168) the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision.

Respectfully, Mr. Dennis asks the Court to impose a variant sentence consisting of, essentially, a sentence of 36 months probation with the following special conditions: (1) a 120 day period of home confinement,(2) 100 hours of community service, and (3) appropriate restitution. Such a sentence does nothing to undermine the deterrent effect of sentencing. Neither does such a sentence undermine the statutory need for the Court to underscore, for Mr. Dennis and for the community, the seriousness of the offense for which he is being sentenced. As proposed herein, the sentence appropriately provides just punishment and respect for the law, so that he may continue to be with his family, and continue to live a productive and law-biding life. To do otherwise would be manifestly unjust and a miscarriage of justice.

Finally, if a period of incarceration is imposed, Mr. Dennis is asking the Court for the following recommendations:

1. A judicial recommendation to the Federal Bureau of Prisons his designation to be within the Dallas, Texas, geographic area. Such a designation will allow his immediate family and children to visit with him without undue financial or logistical hardship, and

2. A judicial recommendation to the Federal Bureau of Prisons Mr. Dennis participate in the following programs: Federal Prisons Industries Program and the Occupational Industries Program.

Respectfully submitted,

THE ORENBERG LAW FIRM, P.C.

_____
Allen H. Orenberg, Bar No. 395519
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Telephone:  (301) 984-8005
Fax:   (301) 984-8008
Cell-Phone:  (301) 807-3847
aorenberg@orenberglaw.com
Counsel to Robert Wayne Dennis

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2023, I caused a copy of the foregoing Defendant's Memorandum in Aid of Sentencing, with Exdhibits to be served by CM/ECF to case registered parties.

_____
Allen H. Orenberg

-18-